May it please this Court, my name is Jessica Buell and I represent the petitioner Mr. Ahmed Muyingo. I would like to reserve three minutes for rebuttal. Mr. Muyingo seeks one sole remedy on review before this Court, which is the deferral of removal under the Convention Against Torture. Because there are no criminal bars to this form of relief, this Court need only consider whether it is more likely than not Mr. Muyingo will be tortured if returned to Uganda. Mr. Muyingo testified in support of his claim. This testimony establishes it will be more likely than not he will face torture if returned to Uganda. Counsel, part of his proof that was commented on by the Board of Immigration Appeal was that he had been tortured and had his fingers broken, correct? That's correct. Mr. Muyingo also produced a 1993 medical report that the BIA found does not corroborate his testimony and, as a matter of fact, directly contradicted it, because the X-ray report showed no fingers being broken or any other bones being broken, right? On that contradiction, broken fingers, no broken fingers, of evidence produced by Muyingo, why is not the BIA entitled to draw an adverse credibility inference and discredit his testimony as to torture? My understanding of the Board of Immigration Appeal's analysis of that report was not to determine that his testimony was incredible. Well, they found that they doubted him. Do they have to say, is your position that an adverse credibility – first of all, you agree that an adverse credibility determination can be made by the BIA, correct? Correct. What you're saying is that an adverse credibility determination was not made by the language because we have reason to doubt the Respondent's testimony regarding alleged torture. That's correct. They have to use the liturgical phrase, we find adverse credibility finding against him? This Court has considered language almost identical to the language the Board of Immigration Appeals used, the reason to doubt language, and found that did not constitute an explicit adverse credibility determination. And in this case, I feel it's even stronger because the Board of Immigration Appeals reversed the immigration judge's adverse credibility determination. Well, the immigration judge based his adverse credibility finding on contradictions which did not go to the heart of the matter of the claim for torture, and properly so. So the BIA was correct in reversing the adverse credibility finding of the IJ. But my question to you is, can you cite me your best case for saying that language, because we have reason to doubt the Respondent's testimony regarding alleged torture and mistreatment he suffered in the past, and have insufficient evidence regarding the likelihood that he will be tortured in the future. Why isn't that a sufficient recitation for us to find that they made an adverse credibility finding? Again, I would turn to the Ninth Circuit's prior holdings, deciding that language identical, almost identical to that language, was not an explicit adverse credibility finding. And can you give me a citation to that? I can, Your Honor. The citation is Caterina. Is it in your brief? It is. What's the page number of your brief? Page 46. Well, I don't want to take away your time, so I'll just take a look at that. That's fine. The other comment I wanted to make regarding your question was that the report actually stated that there was no permanent bony damage, which does not contradict his claim that he had broken fingers. And, in fact, the immigration judge commented on that during his holding, that that isn't a contradiction. It doesn't say whether previously his bones were broken, only that there is no permanent bony damage at the time of the evaluation. The principal indicator of future torture is past experience. Mr. Moingo fled Uganda in 1991 after experiencing extreme torture. Because he was considered to be a political opponent of the Uganda government, he was arrested on false treason charges and held in detention for over four years. During his detention, government officials subjected him to repeated electric shocks, administered to his testicles, repeatedly beat him with rifle butts and other objects, suspended him in a stretching form of punishment, and forced water up his nose for suffocation purposes. The immigration agency acknowledged his detention and torture, noting visible scars in their decision in 1991. Amnesty International also documented his detention and submitted a letter on his behalf. He was regularly visited by delegates from the International Committee of the Red Cross who confirmed his long-term detention. And in the United States, he was evaluated by a medical doctor who treated Mr. Moingo for symptoms resulting from his torture. Respondent now argues, as he did in his motion to dismiss, for lack of jurisdiction, that this court cannot review the appeal. This court rejected Respondent's arguments in its April 2005 order, pursuant to the case Unukohaulu, and there are no new reasons to depart from that order. In fact, there are three reasons why this court has jurisdiction to review the BIA's decision. First, the Real ID Act has no impact on this case or the holding in Unukohaulu. Second, Unukohaulu remains good law and holds there is jurisdiction over merits of CAT appeals regardless of an aggravated felony conviction. And third, there is alternative jurisdiction under 8 U.S.C. 1252a2d. And turning to the BIA's decision, that decision rested on legal errors regarding cooperation and credibility determinations. The BIA departed from well-settled precedent from the circuit in its determination. First, as I previously mentioned, the BIA did not make an explicit credibility, adverse credibility determination, and without that explicit adverse credibility determination, it cannot reject in whole the testimony that Mr. Mojingo provided. Second, the sole reason that the BIA gave for doubting Mr. Mojingo's testimony was that it was related to his testimony relating to his United States criminal convictions, which, as the BIA noted, were immaterial to his fear of torture. Third, it is well-settled in the circuit that the agency cannot insist upon cooperation unless it makes an explicit adverse credibility determination, which it did not do so here. And fourth, Mr. Mojingo's testimony was, in fact, corroborated by four independent sources. And at this time I would like to reserve, unless there are no further questions, I'll reserve the rest of my time for rebuttal. Good morning, and may it please the Court. My name is Greg Mack, counsel for the Attorney General. This Court lacks jurisdiction to review the factual dispute in this case regarding the Board's denial of Petitioner's application for deferral of removal under the Convention Against Torture because Petitioner was actually ordered removed for an aggravated felony, which the sentencing judge described as the ritualistic torture of his children and the unlawful sexual penetration of his 11-year-old daughter. Petitioner disputes how the Board weighed the evidence and decided the case in this case on the merits, but that claim does not constitute a legal or constitutional challenge, and therefore the real idea is expansion of this Court's jurisdiction to consider petitions for review from criminal aliens only for legal and constitutional errors applies here. So, therefore, under Section 1252A2C of Title VIII, this Court lacks jurisdiction under the factual dispute in this case, and the Petitioner can't come here today and argue the merits of the case because the Court can't look at the factual issues in this particular case. With respect to the claim of corroboration and whether the Board appropriately looked to other evidence in this case, the Board was exercising its plenary authority under its regulation to look at the entire case. It has regulatory authority to look at a case de novo to consider judgments of law, and here it was considering whether the alien Petitioner here had met his burden of proof. And in finding that the corroboration was lacking here, the Board decided that the Petitioner here did not meet his burden of proof. And the Board could appropriately consider itself confounded by the Petitioner's denial of the criminal responsibility in this case. That called into question Petitioner's overall candor. And because his candor was in question here, the Board could certainly look at other evidence in the record and determine whether that evidence had met his burden of proof. With respect to the bony injury, that's a factual question. The Board also looked at the report from the State Department that there was a successful amnesty program in Uganda that Petitioner had not looked into, had not applied for, and therefore that was another factor going to the Board's consideration of the corroboration claim here. So again, there were no legal or constitutional errors made by the Board, so therefore the real idea is expansion of this Court's jurisdiction to consider evidence from criminal aliens doesn't apply here. And the Petitioner cannot dispute facts here before this Court because he was actually order-removed for his convictions of an aggravated felony. Let me ask you, and I confess that I misplaced my notes, so I may have some of the facts wrong. But as I recall, the lack of corroborating evidence was one of the factors that led to the decision to deny the application or deny the petition. Is that correct? That's correct. Was the Petitioner, or what we call the Petitioner, as I called the Respondent before, the alien put on notice that he was going to be required to come up with corroboration? Yes, he was put on notice. There was a preliminary hearing, if you will, before the Immigration Judge about what forms of relief he was eligible for. Was he eligible for asylum? Was he eligible for withholding or removal, as well as whether he was eligible for protection of the Convention Against Torture? There was a hearing with respect to that where he denied criminal responsibility. And the Immigration Judge said there, I have questions about that. You're denying the facts of this case, and I have a question about your credibility, so I'm going to make findings that you are not eligible for asylum and that you're not eligible for withholding or removal. And all that you're eligible for are deferral of removal under the Convention Against Torture. So at that point, the individual knows that his credibility and candor is in question before the Immigration Judge. And his candor and credibility and corroboration are always questions of fact before the Immigration Judge going on throughout the case, as well as when he takes appeal to the Board of Immigration Appeals. So he was on notice that his candor was in question when he was before the Immigration Judge, and he did attempt to put on evidence before the Immigration Judge, and then he went on to the Board where the Board concluded that there was simply corroboration was lacking here. And again, the Board looked at its plenary authority to look at the case de novo and said we are confounded by this petitioner's disputing his criminal responsibility when he was sentenced and convicted by the Oregon courts here in this case. And the Board was appropriately confounded in that regard and insisted upon corroboration in this case, and it found it lacking. And so if there's anything to review here, it's only whether there was a legal error with respect to that question. There cannot be review here of any factual dispute because he was actually ordered removed by reason of an aggravated felony. And we would submit that the Enola Quavo case does not control the jurisdictional analysis here, but rather 1252A2C controls that analysis. And the Enola Quavo case can be distinguished in that regard. And I'm not aware of a case, a published case in this circuit yet, dealing with these specific facts in terms of a cat claim where there's a factual dispute raised by an alien who's actually ordered removed. If I understand your position of submission correctly, you say that we do have jurisdiction under the Real ID Act to review a legal question of law, which is whether the BIA correctly required corroborating evidence where there was no adverse credibility finding. That's correct. But you say that doesn't get us anywhere in granting removal or deferral from removal because the factual issue as to whether there was or not torture in the past and a reasonable ground for believing torture in the future, which would be the ground for deferring removal, cannot be reexamined by this court under 1252A2C. That's ultimately correct. The questions in this case ultimately are factual. There's a legal issue, if you will, as to whether it was appropriate to look at further corroboration. And the Board was appropriately confounded by the lack of candor here and appropriately insisted on as a legal matter the corroboration. But if the Board's factual finding was based on the legal errors, that is that they didn't adequately make an adverse credibility finding and they didn't make sufficient adverse credibility finding precisely enough, isn't that also a legal issue that we have jurisdiction to consider? You have jurisdiction to look at a legal claim, and a legal claim would involve whether there was appropriate consideration or whether corroboration was required. That would be before. That would be discussed. But doesn't it also go to whether the BIA actually made a precise enough finding of adverse credibility so that it could disregard his testimony about broken fingers? I would say that the Board didn't make an adverse credibility finding. After all, under its plenary authority and its regulations, it's not supposed to make factual findings. It can only reverse factual findings of an immigration judge for clear air. But under its plenary authority, it can look to whether the alien has met his burden of proof. In examining the burden of proof here, the Board said, we're simply confounded by the denial of criminal responsibility. We don't know what to believe. And cited this Court's case in Chepchew, saying where we don't know what to believe from the alien, we're going to look for corroboration. And you're saying that at this point that the BIA's finding that the plaintiff or the petitioner has not carried his burden of proof of establishing past torture or future probability of torture allows us to affirm what the BIA has done. That's absolutely correct, Your Honor. And again, because there's no factual disputes that can be reviewed by the Court and only a legal error can be reviewed by the Court, and there is an illegal error lacking here, the Court should dismiss the petitioner for review for lack of jurisdiction because he was actually ordered removed for an aggravated felony. And if this Court believes that it does have jurisdiction to the contrary, we would submit that the record does not compel reversal of the Board's decision in this case. So even if the Court jumps through the hurdles and says that there is jurisdiction in this case to look at the case for substantial evidence, the petitioner has not met his burden of proof in that regard because the record simply doesn't compel reversal of the Board's determination. Go back to something you touched on. I'll confess that now in the years I've been dealing with lots of these cases, I've struggled on this adverse credibility-finding case law. And I understand the Board struggles with our court's case law on that subject, so I'm hardly alone. But I can't recall a situation before where I'm reading a BIA's decision, and on the same page we have the IJ's adverse credibility determination reversed or abandoned based on Ninth Circuit case law. And then like a paragraph later, not using the terminology adverse credibility determination, we have what substantively is really the same kind of thing. We don't believe what this person is telling us, so we're not going to take testimony about the fingers and whatnot at face value. And there seems to be some tension there to me. And I understand the case law may push the Board toward this, but it shines a real light on the second part. If the Board isn't prepared, I mean, it can't itself come up with independent grounds to reach an adverse credibility determination. But isn't it really trying to do the same thing here by saying, well, we don't have to accept his testimony at face value because we're skeptical about his credibility? I mean, if you took at face value what he says, it's hard to reach any conclusion other than the fact that he's tortured. It's not for us to reach the factual conclusion, but so they didn't take it at face value. And how can they do that without an adverse credibility determination being made? Well, there's two ways they do that. They don't make an adverse credibility finding, or they don't say we do not believe him. They cite this Court's decision in Chepchew to say, we don't know what to believe because they're confounded by his lack of candor with respect to the criminal responsibility in this case. The immigration judge is clear about that, and the immigration judge knows that you're making a complete denial of criminal responsibility. And the Board says, well, we can't, under Ninth Circuit authority, we can't affirm the immigration judge's adverse credibility determination. But it goes on in that paragraph that Your Honor cites to, to point to its regulatory authority to look at the case de novo. And when it can't determine what to believe, it says, we do have these cases, matter of S&J, which is cited in our brief, to say we can look to further corroboration. And where corroboration is lacking, this alien has not met his burden of proof. I think that's also why we pointed out in our brief that the REAL ID Act's implementation of new law with respect to credibility determination of corroboration is instructive here. It specifically, the legislative history in the REAL ID Act, points to the seemingly confusion between the Court's law and this Court's law and tries to make some sense of it. And the REAL ID Act's legislative history points to the matter of S&J as to how all the courts of appeals should look at credibility and corroboration. And again, I would submit when the Board is looking at a case on de novo review, looking at judgment of the law and whether the alien meets his burden of proof, it can certainly be confounded by the lack of candor and insist on corroboration, and that's not a legal error. And we would submit that the petition for review should be dismissed for one of jurisdiction, Your Honors. If there's no further questions, we would submit. Thank you. Thank you. Rebuttal? On rebuttal, I would just like to clarify two points. Turning first to the Board of Immigration Appeals' decision. You may want to turn first to this jurisdictional argument. That's fine. I can start with the jurisdictional question. That was my second point. The respondent stated that there is no case directly on point regarding jurisdiction, and I would disagree with that. There is a Ninth Circuit-published opinion, Unuku Ha'ulu, which directly addresses the jurisdictional provisions at issue here, which is 1252A2C. Give me the name of that again. Would you like me to spell it? Yeah. It's difficult to pronounce. It's U-N-U-A-K-H-A-U-L-U, I believe. Unuku Ha'ulu. All right. That case was issued in August of 2005, and that case held that when a decision is based on a denial of the merits of the claim and not on a denial that somebody is ineligible for the claim sought because of their aggravated felony conviction, that 1252A2C does not preclude review. The reason that the Real ID Act does not impact that decision is because the Real ID Act added 1252A2D, which expands jurisdiction if it was previously precluded prior to the enactment of Real ID Act. But here, following Unuku Ha'ulu, jurisdiction was not previously precluded. Jurisdiction existed prior to the enactment of Real ID Act, and it exists now. The facts in Mr. Muyungo's case are identical to the facts and the holding in Unuku Ha'ulu. So there's clear jurisdiction here, substantial evidence review over Mr. Muyungo's claim. Even if this panel does not follow the holding of Unuku Ha'ulu. 1252A2C says, No court shall have jurisdiction to review any final order of removal against any alien who is removable by reason of having committed a criminal offense covered in 1227, of which Mr. Muyungo has an abundance. Right? Correct. Now, you're telling us that that has been interpreted by the Ninth Circuit case and the unpronounceable case name as not applying? That's correct. Mr. Unuku Ha'ulu also had an aggravated felony conviction and was charged as an aggravated felon. He applied for relief under the Convention Against Torture. That relief was denied by the immigration judge. But because the immigration judge's order was – the immigration judge based its denial on the merits of the relief, as they did here in Mr. Muyungo's case, and not because Mr. Unuku Ha'ulu was precluded from seeking that relief because of his aggravated felony conviction, the court found there was jurisdiction and that 1252A2C did not apply. And you're saying the IJ here did not find that Muyungo was precluded because of the aggravated felonies? That's correct. Because the deferral of removal – I don't think that's correct. I'll check the record. Deferral of removal is a – that relief – there are no ineligibility bars based on criminal convictions. So Mr. Muyungo is eligible for that relief. And the denial of that relief was based on whether it was more likely than not he would be tortured, not because he couldn't seek that relief because he was convicted of an aggravated felony. You're saying that any final order of removal can be deferred on showing of poverty-related torture? Yes. That's the regulations part. And that is not a review of any final order of removal? That's the holding of Unuku Ha'ulu. I'll check that out. I am out of time, but I would like to make one quick comment regarding the BIA's order. The BIA based its decision to disregard Mr. Muyungo's testimony on the Ninth Circuit case, Chubb Tube. And Respondent and I are in agreement that it did not make an explicit adverse credibility determination. But the BIA misapplied and misinterpreted that case law because in that case the agency had made an explicit adverse credibility determination. And that was the reason they disregarded the testimony. But here under, again, well-established Ninth Circuit case law, if the testimony, if there's no explicit adverse credibility determination, the agency cannot ignore, disregard, and throw out that testimony. It needs to be considered. What's the standard, though, when we review it? That is legal. Must we consider that the record compels a reversal? No, that is reviewed by this Court de novo. And a lot of the INS, which is cited again in my briefs, holds in a similar case regarding cooperation and credibility. If the BIA does not follow Ninth Circuit case law, that's legal error. Are there no further questions? Thank you very much. Thank you, Counsel. Thank you. A very well-argued case by both of you. Case is submitted.
judges: Farris, Clifton, Bea